Good morning, Your Honors. May it please the Court. I am Todd Iliff. I am counsel for the appellant Jamestown Villas Homeowners Association. This case is about damage to the Homeowners Association's roofs that occurred during a hailstorm in 2020. In this case presents a very narrow threshold issue and that is whether an appraisal panel to which the insurance issues were submitted issued a final and definite award. The association accepts the panel's findings. The problem is that the findings were never translated into a clear and definitive determination. Counsel, before you go too far, as you know, the other side sent us the well-written, well-reasoned Cincinnati Insurance Company case just a few weeks ago and you haven't replied. Would you like to reply to that case because it does appear to have a huge impact if not controlled this case? Absolutely, Your Honor. Yes, the Reimer case, that case assumes a clear and definitive award. Our contention is that this award was never clear and definitive and we have consistently argued that from day one. We have requested a declaratory judgment in the district court and the Reimer case assumes that we have a clear and definitive award. The district court here sent it back three times to the panel to clarify, right? Two times, Your Honor. Oh, I'm sorry. I thought there were three times. There were three clarifications originally. One came with the original award. Okay. And the same happened. There weren't three, but they sent it back for clarification in Reimer because they thought it was unclear. So, I mean, you may think it's clear, but apparently the parties are making the same argument you're making here in Reimer. I think that's true, but I think the decision in Reimer was that it presumes that the final determination is clear and definitive and our contention is that it's not clear and definitive. It's still ambiguous. It's never been determined definitively. But one thing you have here that you didn't have in Reimer, which kind of hurts your case actually, is you have a smaller award here that, what was it, $52,000 of damages and here the new roof would have cost over $700,000. So, there's at least a plausible argument by the other side that, well, gosh, we know it's not a new roof because it was $47,000. So, they made the factual, the panel made the factual determination that that's the amount you were owed. But that's the ultimate contention, I believe, Your Honor. I appreciate that question, but that's the ultimate contention is what is the factual determination that they made? We are saying that it's never been definitive. There are issues in the original award. It says $742,000 and it says $52,000. Do you think there's a plausible claim that $47,000 would have paid for the new roof? No, Your Honor. The $47,000 in the original award, as the parties understood it, was to partially replace the roof. The issue is matching. The fundamental issue is matching of the shingles. Do the shingles match? And we contend that the panel said, well, they do match, but they don't match. And that's where they're not definitive. We are asking that the panel issue a ultimate definitive determination. That has not been done. Is there a majority? Are there three appraisers? Is there any consistency in terms of . . . I mean, 2-1, is that sufficient? Do they have to be unanimous in making a conclusion? They do not have to be unanimous, Your Honor, under Minnesota law. 2-1 is an acceptable determination. But again . . . So two say it's matching and one says it's not? Is that how it plays out? Presumably. What we're contending is it's not clear based on what they actually . . . Is that where the amount comes in to clarify that if they meant it's non-matching and you get a new roof, they would have awarded the larger sum? That is correct. So under the insurance contract with State Farm, we would be entitled to matching and under Minnesota case law that are entitled to matching, consistent matching. There are some cases on siding and things like that. So we are entitled to that if the shingles don't match. The point that we're making today is we have not achieved that definitive determination. You know, the way I read it too is, and this is going to happen with Sun and other such things, is I think they said we think on the lower parts there is a match. And we compared it on the ground and we compared it up there. But on the ridges, because of either a dye lot mismatch or more likely, quite frankly, Sun, you know, the Sun, we got them the same . . . we think we got them the same shingles, but because of wear and time, the shingles on the top don't look exactly like a color match. And then they awarded the $47,000. And frankly, I don't think Minnesota law addresses that. But what's your response to that? Does that mean that if there's a little part that doesn't match, you get the whole new roof? Well, Your Honor, that does go to the ultimate question. And Minnesota law, the case law does address that. I believe it's the Cedar Bluff case, and there's a couple of district court, U.S. district court cases that have decided it. But one case was decided on siding, and the they were entitled to a complete residing of the . . . I believe that was a townhome community in that case. So to answer your question, yes, if it's been degraded by sunshine, degraded by weather, the association should be entitled to match it. There is no definitive determination that specifically says that anywhere. I can't point you to that. As I recall, though, Cedar Bluff came in with the opposite history from the appraisal panel. I think in that case, the appraisal panel actually awarded the whole thing. And then the insurer comes in and said, no, no, we don't have to match. We just got to get close. That's what our contract says. And the court said, nope, you get the full thing, and that's defensible from the appraisal panel. So that one upheld an appraisal panel where the full amount was awarded. This would be an extension by doing one where the whole amount wasn't awarded. Well, that's one way of looking at it, Your Honor, certainly. But what we're contending today is we don't know what the definitive determination is. We are asking for a definitive determination of that appraisal panel. They've said, yeah, it matches, but no, it doesn't match. That's not what we're asking, and that's not the law. The appraisal panel is the finder of fact, and they need to make that determination definitively. One question I had is, did they have to ask that question about matching? Is that required by law? So suppose there was just kind of like you get with a verdict on damages. Sometimes they just ask a single question. Well, you ask, is he liable? But then you say, what are the damages? You don't say, what are the damages composed of? So suppose they had just sent it to the appraisal panel, and the appraisal panel comes back and says $47,000, but there's no additional question. What do you do? And does that undermine your argument if you have to enforce that? That's not the facts that we're dealing with here. I believe that's a hypothetical. It's a good hypothetical. It is a hypothetical, yeah. That's not the facts that we're dealing with here. The facts that we are dealing with here were that this issue was presented to the appraisal panel, and they did make very specific clarifications to the original award. That was their first clarifications that were appended to the one-page award. There were six other pages where they went into very detailed determinations of does it match, does it not match? And that was determined to be vague and ambiguous by the district court. Do you think that's essential, though, to ask those additional questions, I guess is what I'm getting at? In this case, it was, because the shingles very clearly did not match, and there's information in the record, photographic information, for example, that shows a, well, I described it as a hodgepodge of mismatching shingles when taken from an overhead drone-type view. So the remedy you seek is an additional clarification? Yes, Your Honor. We're asking for a remand to the district court with a subsequent direction to remand it to the panel for further clarification of a definitive determination of whether or not there is matching and whether or not we're entitled to the larger amount or the smaller amount. Suppose they don't answer, again, or they answer in a way that's basically like we've already said, like, and we just kind of go through this cycle of never getting an answer. What happens then? Well, they need to finish their job. If they haven't finished their job, it needs to keep going back to them. That is their job. That is the appraisal panel's job. What role does the district court play? I mean, can the district court conclude that there's disagreement about matching, but there seemed to be agreement about the award? And so the award amount is determinative? Well, I think in this case, Your Honor, the district court has to definitively instruct the panel to answer the question and to do its job. The panel has not done its job if it doesn't answer definitively. In this case, they started off ambiguous, clarifications were requested, and it didn't get clarified. Clarifications were requested again, and it still is not clarified. It still is subject to various interpretations, and obviously that's why we're here today. I wanted to address the issues raised by State Farm in their brief. They invoked the Federal Arbitration Act, and that's why we're saying that there's a definitive determination. The Federal Arbitration Act does not control, but it's interpretive here, and State Farm has invoked the case law and invoked the basis of that determination here. That is consistent with Minnesota law, that we're entitled to a clear and unambiguous award. With that said, I'm going to reserve the time for rebuttal, and we're asking for a remand to the district court for further instructions to the appraisal panel for determination of a definitive award. Thank you. Good morning, Your Honors. Arielle Lierz on behalf of State Farm and Casualty Company. Your Honors, I ask for a moment of silence to address some very great questions of my opposing counsel here, and I was seriously jotting down some notes here that I'd like to address with all of you here on some of those questions. But counsel, Your Honors are absolutely correct that RIMER is very instructive on this exact case, which is why we have submitted that for supplemental authority for your all consideration. RIMER did not have a definitive award, and that's why we're asking for a remand. And that is what we have here. We have no movement here in the number. The number is always going to stay the same, and that is because we have a single-page award. And this award is signed by two appraisers, and there's a certification at the top of that, and there's only one document that has that information in it. There's only one page. That page is titled aptly Appraisal Award, and that is what we have here. And that is, you know, it's a little bit different from RIMER, but it's clearer than RIMER, which is what Your Honor had just pointed out. And that is where, when you look at . . . Is there any way to know if the panel was unanimous on the amount and simply disputed about what was matching? No. There were two appraisers that had signed the award. That's what the appraisal award shows, and that's at . . . It appears a couple times in the appendix, but joint appendix 29, you can find it there. But only two appraisers had signed it. It's a repair award versus a replacement award, and that was signed on the 23rd of August. The next day are the clarifications. I think that there was a question, too, from the panel of why would the panel kind of issue these clarifications kind of following the award? And I think on backstory on here, too, as you look at some of this case law, too, you know, Scott Moe is the umpire here. Scott Moe also appears in, you know, the Herald case, the Maple Book case. He's very well respected in the industry. He appears, though, you know, often in these kinds of awards. I think truly that he was just trying to avoid litigation. And he's the umpire, and he signed the award. Yes. And another one signed. Yes. Ray Pollack. Thank you. The appraiser Ray Pollack signed. And it's handwritten. It is handwritten. Do you know whose hand . . . does it say whose handwriting it is? I believe . . . well, no. I do not know. I would guess it's the umpire's. That's speculation. We won't proceed down speculation. Yeah. I'm not sure. I'm not sure. I'm not sure who's . . . Comparing the threes. Yes. Yeah. Go ahead. Yep. The . . . you know, they submitted their kind of their clarifications to explain the fact that they have a repair award. But they received all of the evidence from both parties at the appraisal hearing. There's no dispute that they received all of this information. They received the drone photographs. They received, you know, arguments from both sides at the appraisal hearing. There's no question as to that. They went to the property. They went to the property twice, at different times of the day, at different times of the light, to look at this property, to look at these shingles. I know that there was a question, too, about the different areas where the shingles were, as to the lower roof and the upper roof. And I think what's important here is that there is kind of a mention of that. But the upper roof is where the repairs were done by the contractor issues with them. And so those are the issues where there's comments about those dilots in the . . . it's not actually as to the ridge. It's actually in the valleys. But those are the shingles with the dilot issues. And that's where the comments are as to those dilot issues. The bundle of shingles that was taken out at the appraisal hearing was just placed on the lower roof, as that was where the shingles were taken. So when . . . So if there was a dilot problem, though, maybe they needed to get them replaced again, right? They needed to find something that actually matched up there. Absolutely correct, Your Honor. But how do you do that if you've only got $47,000 and you've already spent all that money? The issue is not that the shingles themselves are incorrect. The issue, though, is like . . . and I equated this to at the district court, it's the same thing with, like, a box of tile or anything else like that. Sometimes there's just either a bad batch or sometimes you might pull out darker ones from a batch. Or sometimes, you know, there's . . . you know, it doesn't mean that the shingles themselves are not still the reasonable matching shingles or the correct shingles to use, which is what the panel found. And these are the industry experts here. And in the Reimer case, the most recent case from this court, that's who you want deciding this issue are these industry experts. That's even what Longfellow says. Let the industry experts use their knowledge of this. And they had that knowledge. They know that. They know that there can be dilot and manufacturer errors. That's what Scott Moe says in his clarification, in his second clarification, that there can be manufacturer issues with shingles. You might not always get a good bundle. That happens. We did have a . . . one thing that we have, which is sort of weird here, is we have what, you know, what my kids like to say is TMI, too much information. And so what really ended up happening is they were asked for the amount and then they volunteered a bunch of information, right? The umpire volunteered a bunch of stuff. And that's what makes it kind of like, oh, I don't know. I mean, so what do you do with the too much information, information that maybe they didn't have to give? Absolutely correct. But I think that you go back to why we're all here, which is . . . and what the case law says and look at the law. And the law in Quade v. Secura, right, you go back to the original case. The original case that actually grants the panel the authority to make this decision. And what that case says is that they have the decision to calculate the amount of the loss. And it's assumed in that amount of loss they can kind of make some of these other determinations. But in the amount of loss, that's what they have. They can set the amount of loss. And they did that here. They did that in one sheet of paper. One sheet of paper is they set the amount of loss. And up until . . . never at the district court has that been an issue. The true amount of the loss has not been an issue until briefing at this court. That's never been an issue up until we got here. And so that is where, you know, that this issue kind of keeps evolving and changing. And you can see that in our brief where we've kind of notated that. Where like the issue kind of does keep changing because there is too much information. But if you go back to the court and you look at it, the amount of the loss is already set. It's already been handled. And it's done. And I do know that in the court did send us back for a clarification so that now that they couldn't make then a summary judgment order. But as we all know, there's, you know, the law of the case doctrine. They certainly . . . the district court certainly has the right to reconsider, you know, its earlier interlocutory orders and then issue a final decision on the merits. And that's what they did here. The panel had concluded that these were not matching shingles and awarded the $700,000. Would you be appealing? No. Would I be here? No. I would not be here. Because that would be in the appraisal award then. And that would be signed by the appraisers on this sheet of paper. And that's what's missing from the HOA's case, is that this sheet of paper. And in their briefing, they, you know, they ask in their reply brief, they ask these three questions in their reply brief. They ask, you know, they're saying that, you know, they can't determine from the face of the ward whether the matching shingles were found unavailable, whether full roof replacement is required, and what amount State Farm ultimately owes. But that's all answered in one sheet of paper. They just have refused to acknowledge that this sheet of paper exists. So suppose, I thought Judge Smith might be going here, so I'm going to ask the question that I thought he might have been asking, which is, suppose they had awarded $47,000, or in the order, it said, yes, you get a new roof. And then they awarded $47,000. And they go, well, we can't get a new roof. Maybe 100 years ago, we'd get a new roof for $47,000. Then what do you do in a circumstance like that where the answer to the underlying question, just flat, is a mismatch to the amount awarded? Yeah, I think there's great case law on that. I think that's where you go back to the panel, and that's where you're asking them, okay, how does this fit in with what you've awarded, right? How is this being calculated, then, with where you're at with this amount? And I think that's a great question, then, for the panel. And I think case law instructs you on that, to go back to the panel and clarify that. That's not what the clarification says here. What the clarification says here is like, hey, we found a reasonable matching shingle. We're not changing the amount that we've awarded. We've agreed that this amount is this amount. This is a repair loss, not a replacement loss. The dye lots and everything else like that that the contractor used, we're just, we've awarded an amount to replace those shingles that the contractor used on Building 3. We've been awarded an amount. We'll just redo that work. Clearly, it's a dye lot issue. It's a manufacturer's issue. We'll replace those shingles again. That's what's in this award. And that's supplemented. When you look at the clarifications, that's included in clarifications number two from the panel. And that's at the Joint Appendix 32. That's there. And that's by building, where it clearly delineates this. Briefly, I do also want to address opposing counsel has kind of made reference in his reply argument that State Farm has now invoked the FAA because it's referenced in its standard of review section, a couple of cases for some limited propositions. I think what's being lost in translation here is that now, post-Oliver, post-Oliver v. State Farm, we're kind of in this new era of how to interpret appraisal awards. And I think that this Court understands that as well. And this idea, too, of where does appraiser's testimony lie? How is that interpretation all happening at this point in time? Those cases are cited just purely for the stated propositions in the standard of review section. They're not stated necessarily to invoke the FAA. But the FAA, even if it is invoked, it does not help the HOA's case. Even if the FAA exists here, right? So even if we use the principles underlying the FAA, that does not change any part of this case. You mean the MPAA, right? Because that's the one, the Minnesota equivalent. Or are you saying the Federal Arbitration Act? Well, opposing counsel has argued that State Farm has invoked the Federal Arbitration Act. Minnesota's is the MUAA. Which is, you know, typically now post-Oliver, the thought process is, you can see this in the Longfellow case, but typically the thought process is that you would review the principles that still underlie cases that involve arbitrations. To kind of interpret appraisals, though understanding that there's nuances to appraisals that don't exist with arbitrations. In that, you know, appraisals are limited. They can only, the panels can only decide the amount of loss. They can't decide liability. That's what Quaid v. Securia limits the liability there on that. But, you know, Oliver says that no longer can you look to the MUAA. And so now courts are just left kind of in the ether to figure out what cases to look at now. And courts in the Federal courts have now looked still to cases that involve arbitrations. Those are three cases that just happen to use the FAA as the basis of arbitration. But they're just cited for some very limited context. They don't invoke the FAA. But even if they did, the FAA still supports State Farm's argument here. Because even under the FAA, you can't overturn an arbitration award even for, you know, a serious error, right? Even a serious factual error, which isn't even the case here because there isn't a serious factual error. But with that argument, too, just because they believe that State Farm has invoked the FAA, there is still no issue of vacatur in this case. There's no evidence of vacatur in this case. It was actually waived at district court in this case. There is no vacatur in this case. So there's no issues of that. This is the same as the Reimer case that was just recently decided by this court. And so I would strongly encourage the Court to take a look at that opinion for supplemental authority on that issue. If there are no other questions, I believe that the district court summary judgment decision should be affirmed. Thank you, Your Honors. And I thank you all for your time. Thank you, Ms. Lierz. Mr. Islaff? Thank you, Your Honors. So first of all, we are not looking to change the award. We are looking for a definitive determination of what the award says. Counsel has argued, and State Farm has argued this from the very beginning of this case, that this is about a one-page award. That determination was made by the district court very early on when it sent it back. The district court found, and that's ECF 39, I believe it's appendix 150-something. I don't have it right in front of me. But the district court found that the award was ambiguous, and it's because of the clarifications that were originally appended to the award. The district court sent it back, as we already talked, twice. And that is indicative of the fact that it's not just a one-page award. That issue has been determined. The dye lot issues indicate that the shingles do not match. The reasons really don't matter. We do want the experts to determine whether or not these match. We want them to say, do they match or do they not match? Are you entitled to a new roof or are you not entitled to a new roof? What we're saying is they have not done that. It's not definitive. And that is what we are asking for. I totally agree that there's too much information, but that is part of the determination of whether or not this is definitive and clear. It is not definitive and clear. What is the amount of loss? Why do they even mention $742,000? What's the purpose of that? It's not clear. It's not definitive. So that goes to that TMI issue that Judge Strauss mentioned. The clarifications are all over the place. Well, it doesn't match because of the dye lot. It doesn't match because of granulation issues. Well, we're entitled to matching. We want a definitive determination of whether or not they do match. We still don't know. I'll address, finally, the issue of vacatur. We did not specifically move for that, but we did ask for a declaratory judgment under Minnesota Statutes, Chapter 555. And we do not need to move for vacatur if the court is going to make a determination under the statute. With that, I see my time has almost expired. If there are no further questions, we ask that it be remanded to the district court for further determination by the panel. Thank you very much.